IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

REBA LOUAINE GIVENS,
Plaintiff,
v.                                              Civil Action No. 5:10-CV-0162-IPJ

MICHAEL J. ASTRUE,
Commissioner of Social Security,
Defendant.

# MEMORANDUM OPINION

This matter is before the court on the record and the briefs of the parties. This Court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff is seeking reversal or remand of a final decision of the Commissioner of Social Security. All administrative remedies have been exhausted.

## Procedural Background

The plaintiff applied for Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI") due to pain in her back, neck, shoulder, legs, hips and feet as well as headaches (R. 60, 68-72, 73-75). The administrative proceedings leading to this action began on April 20, 2007, when plaintiff filed an

1

application for DIB and SSI claiming disability beginning April 18, 2007 (*Id*.). These claims were initially denied on June 21, 2007 (R. 50-54). The plaintiff requested a hearing, which was held in front of an administrative law judge ("ALJ") on July 7, 2009 (R. 23-45). The ALJ thereafter rendered an opinion finding that the plaintiff was not under a disability (R. 11-19). The plaintiff's request for an administrative review of the ALJ's decision by the Appeals Council was denied on November 25, 2009 (R. 1-3). The ALJ's decision thus became the final order of the Commissioner of Social Security. *See* 42 U.S.C. § 405(g). This action for judicial review of the agency action followed (doc. 1).

## Factual Background

At the time of the hearing before the Administrative Law Judge ("ALJ"), the plaintiff was 48 years old and had a high school education (R. 27). From at least 1992 until 2007, plaintiff consistently held a job (R. 106). Plaintiff has past relevant work as a sewing machine operator, which is light work and semi-skilled; short-order cook, which is light work and semi-skilled; dishwasher, which is medium work and unskilled; sock sewing machine operator, which is light work and semi-skilled; carpet sewing machine operator, which is medium work and semi-skilled; receptionist, which is sedentary work and semi-skilled; and stock

clerk, which is heavy work and semi-skilled (R. 41-42).

The plaintiff alleges an inability to work due to pain in her back, neck, shoulder, legs, hips and feet, as well as headaches (R. 31, 60). Plaintiff's medical records indicate that the onset of the pain in her back and legs came after lifting some beans in her brother's restaurant (R. 210). Plaintiff testified that her back pain is between an 8 and 10 on a scale of 1 to 10, with 10 being the worst pain, every day (R. 34-35). Plaintiff only takes Ibuprofen or aspirin (R. 35). Plaintiff testified that for her neck and shoulders the pain gets up to a seven or eight, but stated "it's my lower back that's keeping me from doing anything mainly" (R. 37). Plaintiff then testified that she does not think she could work if she only had the neck and shoulder pain (R. 37). Plaintiff has been told by her physicians that the pain in her back, hips, legs and all the way down is due to degenerative disc disease (R. 31-32). The diagnosis for the shoulder and neck pain was left shoulder impingement (R. 149-150). Plaintiff spends 70% of her day lying in a recliner (R. 35). She can only walk half a block before the pain gets too bad (Id.)

In March 2007 plaintiff saw Dr. Ata due to pain in her back (R. 156-157). Dr. Ata had been plaintiff's treating physician since 1997 (R. 171). An MRI revealed degenerative disc disease with broad-based left paracentral disc having mild mass effect at L5-S1 (R. 205). Dr. Ata suggested plaintiff then see Dr. Hash

and advised her to stay off work until she had a follow-up with a neurosurgeon (R. 156). Dr. Hash diagnosed plaintiff with "disc space narrowing at L5-S1 and other scattered degenerative changes. On MRI of the lumbar spine, she has a dark disc at L5-S1 with disc protrusion L5-S1." Dr. Hash recommended epidural steroids and physical therapy, with a possibility of a lumbar fusion (R. 210-11). When plaintiff returned to Dr. Hash on April 16, 2007, she said the steroid injections in her low back had made the pain worse, and complained of pain in her shoulder and neck. Plaintiff had a positive Spurling's test to the left (R. 209). Another MRI revealed left paracentral disc protrusion at C5-6 in her neck (R. 206). Again, Dr. Hash asked whether plaintiff would consider a lumbar fusion, but plaintiff responded that she was not interested (R. 208). Plaintiff went to the emergency room in March 23, 2009, due to back pain (R. 39, 248). Paralumbar spasm was palpable bilaterally (R. 248). At the hospital she received a shot of morphine and was sent home with Robaxin and Lortab 10, which she was told to take every four to six hours (R. 39-40, 248-249). Plaintiff's sister gave her the money for the drugs prescribed after the emergency room visit (R. 40). Plaintiff submitted a statement dated March 10, 2009, from Dr. Ata. Dr. Ata opined that due to back pain, the plaintiff was not able to work (R. 257).

On April 18, 2007, plaintiff quit working due to pain from her back and

shoulder problems (R. 95).  Plaintiff testified that she does not have medical insurance nor the money to pay for medication or the surgery Dr. Hash recommended.  Plaintiff testified that if she had health insurance she would change her mind on having the lumbar fusion surgery done on her back as Dr. Hash recommended (R. 36).

Plaintiff testified she spends 70 percent of the day in her recliner (R. 35).  She does some light chores such as cooking and cleaning dishes, but will have to "sit down for a bit" before finishing (R. 36).  Plaintiff testified that she cannot sit, stand, or walk for long periods of time and estimates she could walk only a half a block before hurting badly (R. 36).  Plaintiff estimates she could walk for thirty minutes before she would have to stop, stand for thirty minutes, and sit for one hour (R. 118).  The state disability examiner determined plaintiff can occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand or walk (with normal breaks) for a total of 6 hours in an 8-hour workday, sit (with normal breaks) for a total of 6 hours in an 8-hour workday, and push/pull for an unlimited time other than as shown for lift/carry restrictions (R. 235).

The ALJ found that degenerative disc disease, and not the left shoulder impingement, is plaintiff's only impairment that is severe (R. 13).  The ALJ found that neither of those impairments meets or medically equals one of the listed

impairments in Appendix 1 of Subpart P, 20 CFR Part 404 (R. 15). The ALJ found that the plaintiff had the residual functional capacity to perform light work after having presented the claimant's abilities to the vocational expert as follows:

> Assume an individual of the Claimant's age and she's currently a younger aged individual. A high school education and with the work history that you have so stated. And for the purpose of hypothetical one assume a range of light work, that is work requiring occasional lifting and carrying of up to 20 pounds and frequently lift and carry up to 10 pounds. And assume that the restrictions of light work would be that individual would be precluded from climbing ropes, ladders, or scaffolding. And [she] should avoid concentrate[d] exposure to the following: Extremes of cold, extremes of heat, extremes of wetness and extremes of humidity. And further, the individual should not work at unprotected heights or around dangerous moving unguarded machinery.

(R. 16, 43). Given the limitations, the vocational expert and the ALJ found that the plaintiff could return to her past relevant work as a receptionist (R. 19, 43). The ALJ also found that plaintiff could perform other work such as a photocopy operator, ticket marker, and a mail sorter (R. 19). The vocational expert did state that all work activity would be precluded if the facts were as plaintiff described them and as the ALJ described hypothetical two:

> "pain at a eight, nine or 10 level and assume that that would be sufficient to affect the individual's persistence, concentration and pace to such an extent that she would not be able to do those activities for periods of up to two consecutive hours."

(R. 44).

### Standard of Review

In a Social Security case, the initial burden of establishing disability is on the claimant, who must prove that due to a mental or physical impairment he/she is unable to perform his/her previous work. If the claimant is successful the burden shifts to the Commissioner to prove that the claimant can perform some other type of work existing in the national economy. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987).

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir. 1996); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

In determining whether substantial evidence exists, this court must scrutinize the record in its entirety, taking into account evidence both favorable and unfavorable to the Commissioner's decision. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). This

court may not decide facts anew, re-weigh evidence or substitute its judgment for that of the ALJ, even if the court finds that the weight of the evidence is against the Commissioner's decision. *Martin*, 894 F.2d at 1529. This court must affirm the decision of the ALJ if it is supported by substantial evidence. *Miles v. Chater*, 84 F.3d 1397 (11th Cir. 1996); *Bloodsworth*, 703 F.2d 1233, 1239 (11th Cir. 1983).

This court must also be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988). No presumption of validity attaches to the Commissioner's determination of the proper legal standards to be applied in evaluating claims. *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987)(citing *Wiggins v. Schweiker*, 679 F.2d 1389 (11th Cir. 1982)); *Davis v. Shalala*, 985 F.2d 528 (11th Cir. 1993). The Commissioner's "failure to ... provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-1146 (11th Cir. 1991).

When making a disability determination, the ALJ must consider the combined effects of all impairments. *Davis v. Shalala*, 985 F.2d at 533; *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987). When more than one impairment exists, the plaintiff may

be found disabled even though none of the impairments considered alone would be disabling. *Id*. The ALJ must evaluate the combination of impairments with respect to the effect they have on the plaintiff's ability to perform the duties of work for which he or she is otherwise capable. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990). Merely reciting that the plaintiff's impairments in combination are not disabling is not enough. The ALJ is required to make specific and well articulated findings as to the effect of the combination of impairments. *Walker*, 826 F.2d at 1001.

## Legal Analysis

Having considered the entire record the court finds that the decision of the ALJ is not supported by substantial evidence. The ALJ ignored numerous medical records in order to reach the conclusion that the plaintiff was able to engage in substantial gainful employment. The ALJ could only reach this conclusion by ignoring or substituting his judgment for the medical evidence contained in the record.

"A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). In order to establish

disability based on testimony of pain and other symptoms, the plaintiff must satisfy two parts of a three part test showing:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain stemming from that condition; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).  The record demonstrates, and the ALJ agreed, that the plaintiff suffers from numerous impairments including degenerative disc disease and left shoulder impingement (R. 17).  The ALJ did acknowledge objective medical evidence of plaintiff's pain such as the MRI performed March 15, 2007, which revealed degenerative disc disease with broad-based left paracentral disc having mild mass effect at L5-S1 and plaintiff's visit with Dr. Hash in March of 2007 where an additional MRI showed plaintiff as having "a dark disc at L5-S1 with disc protrusion L5-S1," as well as paralumbar back spasms palpable bilaterally when plaintiff went to the emergency room March 23, 2009 (R. 205, 210, 248, 17).  However, he disregarded the objective medical findings because plaintiff has "failed to follow-up on recommendations made by her treating physicians" (R. 17).  In 2009, plaintiff's

diagnosis relating to back issues in the emergency room was: degenerative disc disease, acute herniated disc, acute lumbar myofascial strain, and acute sciatica (R. 248). Dr. Hash's assessment of plaintiff's pain in 2007 was that it was "chronic" (R. 210). Additionally, plaintiff's positive Spurling's test administered by Dr. Hash in April of 2007 is objective evidence of the pain in plaintiff's shoulder and neck. Thus, the record contains objective medical evidence to satisfy parts (1) and (2) of the *Foote* pain standard.

    The ALJ found that plaintiff's claims of the severity of her pain were not credible. He points to plaintiff's use of only mild medication such as Ibuprofen and aspirin to support his lack of credibility argument. *See Blacha v. Sec'y of Health and Human Serv.*, 927 F.2d 228, 231 (6th Cir. 1990) ("use of mild medications . . . undercuts complaints of disabling pain"). Additionally, the ALJ argues that plaintiff's lack of interest in the surgical fusion suggested by Dr. Hash and missed physical therapy sessions shows plaintiff's claims of pain do not deserve credibility. The Commissioner, in the brief to the court, cites to *Ellison v. Barnhart* as authority that "refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability." 355 F.3d 1272, 1275. However, the Commissioner fails to point out that the same case also provides that "poverty excuses noncompliance." *Id*. Plaintiff testified she has no medical

insurance or money to pay for medication or surgery. Additionally, it is also unreasonable for the ALJ to assume that plaintiff can borrow money from her sister every time she needs medication or help paying for therapy or surgery (R. 18). Further, plaintiff stated that if she did have health insurance now, she would go through with the lumbar fusion surgery suggested by Dr. Hash (R. 36).

Once there is medical evidence to satisfy the pain standard, subjective testimony of the plaintiff is sufficient to support a finding of disability. *Foote v. Chater*, 67 F.3d at 1561. Plaintiff testified she spends 70 percent of the day in her recliner (R. 35). She testified that she does some light chores such as cooking and cleaning dishes, but will have to sit down "for a bit" before finishing (R. 36). Plaintiff testified that she cannot sit, stand, or walk for long periods of time and estimates she could walk only a half a block before hurting badly (R. 36). Plaintiff testified that her back pain is between an 8 and 10 on a scale of 1 to 10, while the pain in her neck and shoulders gets up to a 7or 8 (R. 34-35, 37). The ALJ failed to take this subjective evidence into account. Further, the ALJ ignored the testimony of the vocational expert that all work activity would be precluded if plaintiff's pain were at a level of 8 to 10 on a scale of 10 (R. 44).

The ALJ improperly disregards the March 2009 opinion of a treating physician, Dr. Ata, that plaintiff is unable to work due to back pain. An opinion

by a medical source that plaintiff is "disabled" or "unable to work" does not mean that the ALJ will conclude that plaintiff is disabled.  It is the ALJ's responsibility to make the decision with respect to disability.  20 C.F.R §§ 404.1527(e)(1), 416.927(e)(1).  However, substantial weight must be given to the opinion of a treating physician, unless the ALJ discounts the opinion for "good cause."  See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).  "'Good cause' exists when the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *See Phillips*, 357 F.3d at 1241.  The ALJ stated that "even though Dr. Ata is the claimant's treating physician, the record indicates that the claimant failed to return to see him for two years . . . and [the opinion] is not consistent with his own treatment records or the medical evidence of record (R. 18).  Again, the ALJ could only reach this conclusion by ignoring or substituting his judgment for the medical evidence contained in the record.  The record, including Dr. Ata's own medical records, contains significant evidence to support Dr. Ata's opinion.  Both Dr. Ata and Dr. Hash had MRIs done on plaintiff that showed the degenerative defects at the L5-S1 and C5-6 disks in plaintiff's back and neck (R. 205, 210).  Dr. Hash twice suggested a lumbar fusion to

plaintiff.  Plaintiff testified that the reason she did not go back to Dr. Ata and Dr. Hash was because she had been told that the only treatment option left was surgery (R. 33).  Plaintiff also testified that she would have surgery if she had medical insurance (R. 36).  In addition, plaintiff went to the emergency room with spasms resulting from her back issues.  Good cause to disregard the substantial weight of Dr. Ata's opinion does not exist where his own medical records and the record as a whole bolster his opinion.

   By inferring that the plaintiff was able to work from his selective review of the evidence, the ALJ substituted his opinion for that of the medical reports in the file. "As the hearing officer, [the ALJ] may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional." *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir.1992).  This court cannot conclude that the ALJ's finding that plaintiff can perform her past relevant work as a receptionist is supported by substantial evidence.  To the contrary, records in evidence suggest that plaintiff has significant and severe limitations.  Thus, the court finds that there is substantial evidence to support plaintiff's claim that she is disabled and has been so since April 18, 2007.

## Conclusion

Based on the lack of substantial evidence in support of the ALJ's findings, the court shall REVERSE the decision of the ALJ and REMAND the case for calculation of benefits owed to the plaintiff from the date of the plaintiff's onset of disability, April 18, 2007, by separate order.

Done, this 10th of November 2010.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE